The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Mr. Neihardt, whenever you're ready, we'd be pleased to hear from you. Thank you, Your Honor. Your Honors, and may it please the Court, my name is Seth Neihardt. I am appointed counsel to represent Mikkel McKinnie and Mr. McKinnie received a sentence in the Eastern District of North Carolina that is on appeal here today. Mr. McKinnie was sentenced to a very large variant and all departure sentence, so approximately 344%. And his case involved a death in which the Court applied the death results, departure, a second departure on the basis of uncharged conduct under USK 5.21, and also a variance all to 120 months. Do you, what do you have in terms of, are you appealing the procedural reasonableness of the sentence or simply the extent of the variance? I am appealing both the procedural reasonableness of departures and also the extent of the variance. Well, there's a, you know, often some confusion between what belongs in the procedural reasonableness box and what belongs in the substantive reasonableness box. Could you tell me what, where in you think this was procedurally reasonable? I mean, I don't think, probably the extent of the variance is a question of substantive reasonableness more, but just tell me about the procedural reasonableness that you take issue with. Thank you, Your Honor. First of all, and I think the main issue with respect to procedural reasonableness is the causation requirements for finding that death resulted from drugs that my client had sold to a victim. Can we say, can we say with certainty that the judge relied on the death enhancement as opposed to 3553 factors? Well first of all, you can't necessarily separate those, Your Honor. I do believe he, I do believe that his analysis of the 3553A factors was driven by the question of a death resulting from my client's activities and also admittedly other aspects of his criminal record. But as far as the death results, that's an enhancement that was used to reach the guideline range of 21 to 27 months, was it not? No, Your Honor. It was, the guideline range did not take into account, I don't believe, the death results other than by, I think it crossed, I'm not sure if the cross-reference hit, but actually I believe it was in the transcript, an analysis under the departure of provisional 5K2.1 is my understanding of the record. Counsel, to follow up on Judge Floyd's question, even if we were to assume that the departure analysis was incorrect, there's a separate variance analysis. So they were decided in the alternative. So even if the departure analysis might have been inappropriate, just assuming that, how does that affect the variance analysis? There's two ways. First of all, if the departure were inappropriate, then you have a situation where in general the same risk is involved in fentanyl, but if death is not established to be caused by or resulting from the defendant's drugs, that is a major factor, but not the only factor in the district court's analysis. So when I'm still trying to get the procedural reasonableness of this, if you, as I'm not sure I understand where you're objecting to procedural reasonableness, unless I assume that arriving at a guidelines range is a proponent of procedural reasonableness, to get to the guidelines range and correctly calculate. Now where in do you think that the guidelines range was not correctly calculated? Because I don't understand that. It was, there was not an issue as to the underlying guideline range, is my understanding, and I didn't raise. Okay, fine. So let me just get that clear. So the guidelines range, the 21 to 27 months, you're not contesting that? That's correct, Your Honor. Okay, I just wanted to make sure. It's rather the extent of the variance. Well, why wouldn't this fit within the 35, I think Judge Agee raised a good point. You can set aside the departure analysis, not to make it necessarily wrong, but what about the variance? Was it, the variance, was it inadequately explained? Did it rest on, because I think that goes to the substantive reasonableness, and I'm not sure, I understand that you don't like, but did it, did it, was it not sufficiently explained, or did it rest on clearly erroneous factual findings, or were there things that were taken into consideration that did not relate to the 3553A factors? I mean, I'm just wondering what your problem with it is. It's an extensive variance, but just superficially, at least, it seems like the things that were taken into account were things that related to 35, one of the, or another of the 3553A factors, and it seems to me the district court was trying to explain this extensively. I just want to know where your quarrel is. With respect to the judge's explanation, I would concede that he did lay out a number of factors, but his explanation was also inextricably tied to the previous finding, which wasn't explicitly put out in the testimony, and I do agree that it is, but for causation under Burrage and this court's substantive case in Young versus Antonelli. So, is your argument that for a variance that the court has to apply Burrage? My argument is that the court, as one of the factors going into the variance, the court, the fact that the court did not correctly apply Burrage or at least make an explicit statement that it was doing so after being raised by- Yeah, but why would Burrage have an effect in the variance analysis under the statute? Statutory factors. Part of one of the statutory factors is the calculation of the guidelines, and my contention would be that a- Right, but you just- Departure would go into that. Excuse me, counsel. You just indicated in response to my question that you had no quarrel with the guidelines range, and I think that's perfectly reasonable, and then, as Judge Agee pointed out, in determining the guidelines range, that's when you apply Burrage. If you have no problem with the guidelines range, and Burrage is a part of applying the guidelines range, as far as I can see, Burrage and Young v. Antonelli, you know, both are harmonious and requiring a but-for test, and that's what he applied and he arrived at the guidelines range, so I'm not sure how Burrage figures. I have the same question Judge Agee has. I'm just not sure how Burrage figures into the 35-53 age variance analysis. I do think it figures into the guidelines calculations, but I'm not sure about the variance analysis. I think there, you just have to ask a different kind of question, which is, were the, did the district court give you a chance to confess the variance? Did he adequately explain the variance? Did the variance, were the variance findings clearly erroneous? Did the variance findings relate to 35-53A, and I'm not sure, you know, I'm not sure, I guess the whole thing is, I'm not sure what your quarrel is. Well, your honor, with respect to the variance, you know, part of the substance of reasonableness analysis and part of what appellants counsel on in criminal cases often, and myself at least, feel almost required to bring in cases like this is an argument that also looks at the extent of the variance, and that is a portion of substance of reasonableness. And so in that respect, I would, under the variance analysis, I would contend that it is substantively unreasonable for a couple of points. First of all, you know, government counsel has hopefully given the court a chart in its supplemental briefing on page 25 and 26 of court's variances in drug trafficking cases, and this would be very much on the high end. If another one of the issues of the court below was the risk involved in fentanyl that Judge Dever went over, I think, in the record, and if you're not establishing a death as being caused by defendant's drugs, my argument would be on a substantive reasonableness analysis, that's a factor that is out of whack or is given more than appropriate weight if it's not been established. Counsel, let me ask you before your time runs out. The First Circuit decided a case recently called Heidenstrom, which seems to be very factually similar to this case, and if anything, the facts here are even stronger for the government. Why shouldn't we just follow that case here? Well, there is a critical distinction in the Heidenstrom case that in Heidenstrom, at least with respect to the but-for causation, there was an explicit finding by the court, and also there was explicit testimony to that ultimate issue, and those explicit testimony by the expert and or the explicit finding by the judge are missing in this case, I would contend. I thought the first... Go ahead. Oh, go ahead, Judge Agee. I was just going to say, I thought the point of the First Circuit's ruling was that the district court judge was very clear that regardless of the circumstances, this was the sentence that the judge was going to give. Yes, Your Honor, and it is parallel on a number of cases. I would contend that... Our current case, I would ask the court not to follow it in that respect. All right. Thank you very much. Judge Floyd, would you like to ask any questions of counsel? No, I don't have any. You okay? I didn't want to move on to Mr. Bragdon if you had any questions. No, I'm fine. Okay, good. Judge Agee, you okay? Yes, sir. I have no further questions at this time. All right. Thank you, Mr. Nehart. Let's hear from Mr. Bragdon. Mr. Bragdon. Good morning. May it please the court. My name is David Bragdon, and I represent the United States. I think to answer some of the court's questions regarding the substantive reasonableness and the alternative variants, for the district court's alternative variants, I think substantive reasonableness is the only question that was raised here. I don't think there's a procedural reasonableness question there. And I do think the analysis does not follow Barrage for that question, because I think the court can look at this defendant here was engaged in incredibly dangerous conduct. He knew that he was distributing a very potent and high-powered drug, specifically fentanyl, and he knew that it was risky. He knew that there were overdoses being caused, that this victim had actually reacted very strongly the first time he took it. And he was warning people that this is, be careful, this is dangerous. And so I think the variance is appropriate based on that. And whether or not, you know, the specific causation standard of, you know, was there but for causation, was there approximate cause, I don't think that that analysis comes into play at the variant stage. So I think that the judge's decision is warranted. So you say that the variance was not based on a finding of causation of death? I think the court made an alternative holding here. And I think... He did do that. He did say that. So I would say yes. I mean, I think the focus of the court's conduct is on the defendant's culpable behavior in distributing this very dangerous drug. So I don't think that alternative holding depends on the specifics of causation. And, you know... Which alternative holding, the variance? Yes. So he made, he made, you know, three holdings, you know, there was the 2.1 upward departure, then an alternative departure under, sorry, 5K, 5K 2.1, and then the alternative holding under 5K 2.21, and then the alternative. So there's sort of three supports for the same decision. And why wouldn't the variance analysis be a straightforward way to get at it? I think it is a straightforward way to resolve the issue here. So I don't think the court has to grapple with the causation questions related to the two departure issues. I think we win under those. I think the evidence is very strong there. But I don't think that that is raised by the court's alternative variance. I always thought that those causation questions and everything were part and parcel of the guidelines calculation. Um, and that the Burrage and Young-Anthony, the LA and Budford causation were primarily of a, um, utilized in calculating the guidelines range. And there's no challenge here to the guidelines range. Is that correct? It is correct that there's no challenge to the guidelines range. I would say, though, that I think we would agree with the defendant that there is a Budford causation in the 5K 2.1 departure analysis. But if we're using the 3553A variance analysis, do we get into that? No, you do not. You do not. So because the court made an alternative variance holding, the court does not need to get into that at all. It would only get into that if it were analyzing the court's departure. And I did want to just note in terms of the size of the variance here, I think whenever you have a very low guidelines range, the variance seems a lot higher from a percentage perspective. But I wanted to note that had the defendant actually been convicted of this drug distribution resulting in death, and had the government charged him of this, you know, prior drug conviction that he had, his guidelines range would have been 360 to the left. And had he just been convicted of the drug resulting in death without the past criminal conviction, it would have been 235 to 293 months. And so I think... Let me ask you a question. I want to make sure that we're not, we wouldn't be opening the door to all kinds of variances. In these drug cases, when death resolves. And then but-for causation. So what can you point me to that are limiting factors in cabining this variance analysis factors that are unique to this case that wouldn't just be applied willy-nilly across the board? What do you focus on that, in your view, is distinctly individual about what happened here? Well, that's a great question. I think what we focus on is the defendant's callous indifference to life here. And we see that in his text. We see repeatedly him saying that, you know, be careful because people are going out on this drug. And so he's texting that. He was, you know, thinking, and I'll quote, there's some profanity, but quote, thinking about dude ass earlier, MF couldn't even walk, talk, think that MF was gone, bro. He's referring to the victim here who had taken his drug earlier. He then texts another customer saying, please be careful, it's really strong. And this is a customer that he just sold crumbs to, not even, you know, full rocks or anything like that. And so I think what we would focus on is the defendant's knowledge that this is very dangerous. All right. Well, so does this variance analysis apply to every fentanyl? I think it's always a dangerous drugs and it's common knowledge. I think that the definition of a variance is that it's a discretion for the judge in the specific facts of the case. And all fentanyl is not equal. All quantities are not equal. There's lots of people who take fentanyl and there's much lower risk or less risk of death. I think what makes this unique is even by fentanyl standards, this was a very powerful dose of the drug and the defendant knew it, you know. And so I think that's what makes this particular case unique. And I do think that we do have evidence here that it did cause the victim's death. And so I think that's another significant factor that the court could consider. The, I think the district court made a finding that he had seen the defendant, he had seen the deceased stumbling out of the bathroom. And so he, I think there's a finding there that he had actually seen him in a drug-induced state to begin with. And that you had the doctor's testimony of the shocking level of the fentanyl in the decedent. And you have the fact that he is shaming the defendant for going to Durham when he had a fire of his own. So what I'm looking at is just, I think that the facts here are just awful. But at the same time, I don't want to just throw open doors to a large percentage variance in a case that doesn't have the kind of egregious facts that this one did. I mean, it almost, it's only one step away from an actual homicide here. But in order to make a profit on his drug distributions, in order to get a little bit more money, he not only increased this man's dependency, but he took a terrible chance with his life. And the facts here are just horrible. Yes, I agree. And I do think the court's concern about other cases and how this would play out, I think that's exactly why this court reviews for substantive reasonableness, case by case, is so that both the district court and this court is looking at the facts of each case and not, you know, it's the whole purpose of allowing the guidelines to be advisory in the first place, is to give courts the discretion in specific factual situations. And I think the district court reasonably exercised that here. And I think the other thing I would point to is if the court reads the victim allocution that was made in the sentencing as well, I think that's, again, an appropriate part of the record and a very powerful part of the record that the court could consider in making its decision. But I would note just on the causation issue, because I don't want to let that go entirely, I do think there's three things I would point to, to show that that but-for causation was shown by a preponderance of the evidence and that the district court did not clearly err. First, the timeline shows, strongly suggests that McKinney's fentanyl was the last drug that Nelson, the victim, bought before he died. And I think a reasonable inference from that is that he used the heroin he brought from another drug dealer when he was drug sick, immediately after he bought it, because he was drug sick. He then bought McKinney's fentanyl at 10.45 that night, went to bed and used it the next morning. He was alive at 7 a.m. when his roommate saw him and he died, you know, he was in an over, she found him in an overdose state at 10. The second thing I would point to is the defendant, we know that McKinney's drugs were incredibly strong based on his own statements and texts and his observation of Nelson when he first used the drug. And the third thing I'll say is it was the fentanyl, not the heroin, that was present in McKinney's body in an unusually high concentration. Mr. Brogdon, do you contend that the judge doesn't have to use the magical word, but for? Isn't that what you're arguing now? Yes, we do think when there's no dispute about the standard, and here there was no dispute below, the defendant immediately before the judge rules on this, the defendant says, but for causation applies in barrage. And the judge then, you know, makes this decision. I don't think he has to use a magical term. I think it's clear that he found that the fentanyl, the death resulted from the fentanyl use. And I think the evidence strongly supports that here. So, you know, is it also permissible, you've talked at length about the fact that there is but for cause, is it permissible for a district judge to take but for causation as one of many cases? Yes. It's not just a feature of a departure, but it could be used not as the sole or exclusive factor, because I guess that would be duplicative. But it's certainly a lot more serious case for a variant if the but for causation could be used as one of the factors in the variant. I do agree with that, Your Honor. I think it can be in a variant situation, the court can consider all the factors, but for causation can be one of them. The defendant's knowledge and the risk that he took with respect to his customer's lives can be another significant one. And the defendant here also did have a criminal history. He had three assaults. He, you know, pointed a gun, you know, into a woman's mouth, I believe, you know, grabbed her by the neck. And so there is, I believe, plenty of support to support the judge's variance. If there's no further questions, I would ask the court to adjourn. So JG, Judge Floyd, do you all have further questions of this matter? No, sir. I assume, counsel, that you would agree that this Heidenstrom case could also apply in this circumstance? Yes, Your Honor. We cited that case in our supplemental brief, and I do believe it's directly applicable here to say that regardless, the court does not have to reach the departure issue here or causation. It may affirm based on the variance. And the only question there is whether the sentence was substantively reasonable based on the facts. Thank you. All right. We thank you. And no further questions. Mr. Nehart, you have some rebuttal time. We'd be pleased to hear from you. There's a couple of points that I would briefly like to make in rebuttal. With respect to the but-for causation, I do recognize that I have a number of arguments I need to make to finally get over the goal line, and that is one of them. And the First Circuit Heidenstrom case, I would cite as an example of how but-for causation is shown that wasn't necessarily shown in this case. And that was the explicit findings, the explicit statement first of an expert when there was a case of multiple drugs and different suppliers at different times especially, that an expert testimony making that statement is the way for a government to prove but-for causation. And I would ask the court to adopt that as an example. Those are the doctor's testimony here. I don't think there's any requirement that district judges bring in experts. But a part of the case the district court relied on was the astonishingly high level of the that effect. So, that's probably the most relevant but-for testimony you could have. But the expert did not make a statement about that high level of fentanyl actually being the cause of the death. And unless I missed it, I did not see that in the testimony or report of the ingested. And that was the shocking level of that in his system. I don't, I'm not seeing any kind of alternative argument of causation put forward. There's no alternative, there's no alternative explanation that holds water. Your Honor, I would concede that there is not a specific alternative explanation that was advanced below in the record. However, one of the arguments of the government was in general, expert testimony is not required and there are a number of cases there. But I would contend as a matter of public policy or case law that without expert testimony of the type we're talking about here, you really can't say that in a specific case, a drug killed a specific victim when there was a mix of different drugs and different time and different suppliers kind of going into the mix. So, I did want to address that point. Second, you know, the government did raise a number of issues with respect to the, you know, the alternatives, but that, you know, is a consequence of defendants plea bargaining and the government had made that decision with respect to its own plea bargaining. With respect to the specific differences in the variant here and the specifics of this case, I would contend that below the analysis of the district court is pretty, is even on the variant, very much wrapped up in a finding that my client had been the cause and my client's drugs that were sold to the victim were the cause of his death. And if you have no further questions, I would thank the court for its time in considering this case. Judge Agee, Judge Floyd, do you all have any further questions? No, sir. No further questions. All right. All right. We want to thank you both and we will, Nehart, I see that you're court appointed and I want to express the court's appreciation for your services. Thank you so much, Mr. Bregman. We appreciate your argument very much as well.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd